**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|                                        |     |
|----------------------------------------|-----|
| **FLORENCE BARRY,**                    | )   |
|                                        | )   |
| **Plaintiff,**                         | )   |
|                                        | )   |
| **v.**                                 | )   |
|                                        | )   |
| **ROLLARAMA SKATING CENTER, INC.,**    | )   |
|                                        | )   |
| **Defendant.**                         | )   |

)     **Civil Action No.**
)     **07-40266-FDS**

_____

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**SAYLOR, J.**

This is a personal injury action, with subject matter jurisdiction based on diversity of citizenship. Plaintiff Florence Barry alleges that she fell down a set of bleachers at a facility in Schenectady, New York, owned by defendant Rollarama Skating Center, Inc., sustaining significant injuries. Rollarama has moved to dismiss the case on grounds of lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons stated below, the motion will be denied.

**I.**   **Background**

**A.**   **Plaintiff's Injury**

Florence Barry resides in Leominster, Massachusetts, with her granddaughter, Chantal. Chantal participates in a roller figure skating club at Roll on America, a roller skating facility in Leominster. The club is a member of a larger regional organization, the Northeast Regional Roller Figure Skating Association ("NRRFSA"). The NRRFSA is based in Worcester,

Massachusetts.  According to Barry, the NRRFSA includes clubs from Massachusetts, Rhode Island, Connecticut, and New York.  The NRRFSA is affiliated with a national roller skating organization, USA Roller Sports.

In 2006, Chantal participated, along with other members of her local skating club, in the Pre-Regional Championships for the NRRFSA.  Barry paid the required participation fee, and on April 29, 2006, she accompanied Chantal to the Rollarama facility in Schenectady for the event.

At the beginning of the event, Barry stood by a wall that encircled the skating area.  She was then directed by "someone in charge of the event" to take a seat in the bleachers, which she did.  According to Barry, the bleacher seating area was (1) open on all sides, (2) provided no aisles to access the seating, (3) provided no hand rails or other fall restraint devices, and (4) did not have a non-skid surface.  In order to ascend or descend the bleachers, a spectator must walk on the same surface that functions as the bench for sitting.  Between the benches—which also function as the stairs—there are recessed areas to accommodate a spectator's feet.

At some point after the skating competition concluded, Barry began to descend the bleachers.  While descending, she fell forward and landed on the floor between the bleachers and the wall encircling the skating area.  Due to injuries from her fall, Barry underwent surgery on her right shoulder.  She currently has only limited function of her shoulder and continues to experience restricted range of motion and diminished strength.

**B.**     **Commercial Activity in Massachusetts by Rollarama**

Rollarama Skating Center, Inc., is a New York corporation with a sole place of business in Schenectady, New York.  According to Rollarama, it does not own any property in Massachusetts; it does not do business, advertise, or derive any revenue from Massachusetts; and

its conduct does not in any manner affect commerce in Massachusetts.

According to Barry, she obtained information about the April 19 event through NRRFSA's website.  Rollarama posted information about the event on the NRRFSA website, as well as a participant application form.  The website also provided directions to the event, hotel information, and registration fee information.[1]

Barry also contends that the various skating facilities that belong to NRRFSA bid against each other to host events at which clubs, like the "Roll on America Club", participate in regional competitions.  She contends that Rollarama hosted both the 2006 Pre-Regional Championships, where she was injured, and the 2006 Regional Championships.  Based on the information from the website, it appears that the "Rollarama Skating Club," which is sponsored by Rollarama, was "in attendance with full voting privileges" at a September 24, 2006 NRRFSA meeting in Worcester, Massachusetts.

C.    **Present Claims**

On October 11, 2007, Barry filed the present action against Rollarama, alleging negligence (Count I) and violations of Massachusetts and/or New York consumer protection laws (Count II—Mass. Gen. Laws ch. 93A and/or the New York Consolidated Stats. Art. 26, § 2601 *et seq.*). Rollarama has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) based on lack of personal jurisdiction.

---

[1] As noted, Barry paid the registration fee for the event.  Barry does not specify whether she paid the registration fee to the Roll on America club or directly to Rollarama.  Apparently, Rollarama asked each skating club to forward the individual skaters' applications with one check from the club for the registration fees.  With no information in the record to the contrary, the Court will assume that Barry paid the registration fee to Roll on America and the club in turn sent the completed participant applications and a check to Rollarama to cover the fees for all of its participants.

II.    **Analysis**

A.    **General Principles of Personal Jurisdiction**

The exercise of personal jurisdiction over a defendant must be both authorized by statute

and consistent with the due process requirements of the United States Constitution. *Nowak v.*

*Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996); *Intech, Inc., v. Triple "C" Marine*

*Salvage, Inc.*, 444 Mass. 122, 125 (2005); *Good Hope Indus., Inc. v. Ryder Scott, Co.*, 378 Mass.

1, 5-6 (1979).  Furthermore,

> A district court may exercise authority over a defendant by virtue of either general
> or specific jurisdiction.  Specific jurisdiction exists when there is a demonstrable
> nexus between a plaintiff's claims and a defendant's forum-based activities.
> General jurisdiction exists when the litigation is not directly founded on the
> defendant's forum-based contacts, but the defendant has nevertheless engaged in
> continuous and systematic activity, unrelated to the suit, in the forum state.

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citations and

quotations omitted).

The plaintiff bears the burden of showing that a court has personal jurisdiction over the

defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st

Cir. 2002).  A district court faced with a motion to dismiss under Rule 12(b)(2) may choose

among several methods for determining whether the plaintiff has met its burden:  the "prima facie"

standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard. *Id.* at 50-

51 & n.5.  The "most conventional" and "most commonly used" of these methods is the "prima

facie" standard. *Id.* at 51; *Foster-Miller, Inc., v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st

Cir. 1995); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).

In conducting that analysis, a court is required to take specific facts affirmatively alleged

4

by the plaintiff as true (whether or not disputed) and "construe them in the light most congenial to the plaintiff's claim." *Massachusetts Sch. of Law at Andover, Inc., v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). It then "add[s] to the mix facts put forward by defendant[], to the extent they are uncontradicted." *Daynard*, 290 F.3d at 51. The prima facie method is appropriate here because the jurisdictional inquiry does not involve materially conflicting versions of the relevant facts. *See Foster-Miller*, 46 F.3d at 145-146 (describing the preponderance-of-the-evidence standard and likelihood standards).

### B.   Massachusetts Long-Arm Statute

This case presents an issue of specific jurisdiction.   The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, states in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:
>
> a)      transacting any business in this commonwealth . . . .

Mass. Gen. Laws ch. 223A, § 3.[2]  In order for jurisdiction to exist under that subsection, (1) defendant must have transacted business in Massachusetts, and (2) plaintiff's claim must have arisen from defendant's transaction of such business. *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 767 (1994).

The first question is whether plaintiff's claim arises from the "transaction of any business" by defendant in Massachusetts. The "transacting any business" language of Mass. Gen. Laws ch. 223A, § 3(a) is interpreted very broadly. A defendant need not be physically present in a state to

---

[2] Mass. Gen. Laws ch. 223A, §§ 3(b)-(d) are not applicable here because plaintiff does not contend that Rollarama contracted to supply services or things in Massachusetts; caused tortious injury by an act or omission in Massachusetts; or caused tortious injury in Massachusetts by an act or omission outside the state.

"transact business" in that state.  *Energy Capital and Servs. LP II v. Hill Refrigeration, Inc.*, 989 F. Supp. 353, 355 (D. Mass. 1997).  In some circumstances, relatively scant or isolated communication into Massachusetts may be enough to establish compliance with the long-arm statute.  *See, e.g., Hahn v. Vermont Law Sch.*, 698 F.2d 48, 50-51 (1st Cir. 1983) (holding that even though Massachusetts plaintiff initiated communications, plaintiff receiving law school application information and an admissions letter established personal jurisdiction over the law school); *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 194-195 (1st Cir. 1980) (sending a letter alleging patent infringement and threatening litigation created personal jurisdiction).

The Massachusetts Supreme Judicial Court has adopted a "but for" test for determining when an injury arises from the transaction of business.  *Tatro*, 416 Mass. at 770-71.  For example, in *Tatro*, a Massachusetts plaintiff sued a California hotel for injuries she sustained in California. The SJC "concluded that the hotel's solicitation of business from Massachusetts residents satisfied the 'transacting any business' requirement of Section 3(a) . . . and that the 'arising from' requirement was satisfied where, but for the hotel's solicitations and acceptance of reservations, the plaintiff would not have been injured in California."  *Nowak*, 94 F.3d at 712 (*citing Tatro*, 416 Mass. at 766-68, 771-72).

Under the principle established in *Tatro*, Rollarama "transacted business" in the state. Specifically, on several occasions Rollarama bid for the opportunity to host the regional competitions for NRRFSA, which is based in Massachusetts.  After securing the hosting role for the 2006 Pre-Regional Championships,  Rollarama posted information about the competition and a participant application form on NRRFSA's website.  In order for Chantal to participate in that competition, Barry completed the application form and paid the entrance fee to the Roll on

America club.  The club in turn submitted the completed application forms and a check to

Rollarama to cover the fees for Chantal and its other participants.  Therefore, at a minimum,

Rollarama conducted business directly with NRRFSA, a Massachusetts-based association, and the

Roll on America club, a Massachusetts-based club, and indirectly with Barry, a Massachusetts

resident, in connection with the 2006 Pre-Regional Championships.  Although it is not clear from

the record, it appears that Rollarama also conducted business with other Massachusetts-based

NRRFSA club members in connection with that competition.

Furthermore, a Rollarama representative attended at least one meeting of the NRRFSA in

September 2006.  The minutes from that meeting indicate that Rollarama hosted the 2006 Pre-

Championships, as well as the 2006 Regional Championships for speed and artistic skating.

Taking all of these facts together, the Court concludes that Rollarama's activities amount to the

transaction of business in Massachusetts.  *See Tatro*, 416 Mass. at 768-69.

Furthermore, Barry's injuries "arose from" Rollarama's transaction of business in the

Massachusetts.  Specifically, but for Rollarama bidding for and securing the opportunity to host

the competition and accepting Chantal's participation application and entrance fee, Barry would

not have been injured.  *Id.* at 769-72.

Accordingly, the requirements of ch. 223A, § 3(a) have been satisfied, and specific

jurisdiction may be asserted under the long-arm statute.

**C.**     **<u>Due Process</u>**

That statutory determination does not, however, end the inquiry, as the exercise of

personal jurisdiction must also comport with the due process requirements of the Fourteenth

Amendment.  *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[3]  Whether

the exercise of personal jurisdiction satisfies due process requires a three-part analysis.  First, the

claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state

activities.  Second, the defendant's forum-state contacts must represent a purposeful availment of

the privilege of conducting activities in the forum state, thereby invoking the benefits and

protections of that state's laws and making the defendant's involuntary presence before the state

court foreseeable.  Third, the exercise of jurisdiction must be, in light of certain enumerated

"gestalt factors," reasonable.  *See Pritzker v. Yari*, 42 F.3d 53, 60-61 (1st Cir. 1994).  Here, as

discussed below, the Court concludes that the exercise of personal jurisdiction over defendant

satisfies the constitutional requirements.

### 1.   Relatedness

The first consideration is whether Berry's claims arise out of, or relate to, Rollarama's

activities in Massachusetts.  The First Circuit has adopted a relatedness standard that is

somewhere between a "proximate cause" and a "but-for" standard.  *Nowak*, 94 F.3d at 715.

> When a foreign corporation directly targets resident in an ongoing effort to further
> a business relationship, and achieves its purpose, it may not necessarily be
> unreasonable to subject that corporation to forum jurisdiction when the efforts lead
> to tortious result.  The corporation's own conduct increases the likelihood that a
> specific resident will respond favorably.  If the resident is harmed while engaged in
> activities integral to the relationship the corporation sought to establish, we think
> the nexus between the contacts and the cause of action is sufficiently strong to
> survive the due process inquiry at least at the relatedness stage.

---

[3]  Some cases have observed that a court may sidestep the statutory inquiry and proceed directly to the
constitutional analysis because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm
statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.
*See, e.g., Daynard*, 290 F.3d at 52; *Sawtelle*, 70 F.3d at 1388.  When courts adopt this mode of analysis, they
generally treat the Massachusetts long-arm statute and the "relatedness" prong of the three-part analysis as
functionally identical.  *See Sawtelle*, 70 F.3d at 1388.

*Id.* at 715-16. The standard is a "flexible, relaxed standard" that is functionally the same as the statutory requirement noted above. *Pritzker*, 42 F.3d at 61.

Here, Rollarama directly solicited business from Massachusetts residents by bidding to host, and subsequently hosting, NRRFSA competitions—competitions in which Massachusetts residents participated. Barry entered her granddaughter in such a competition and it was while attending that event that she suffered an injury. While the nexus between Rollarama's solicitation of NRRFSA's business and Barry's injury "does not constitute a proximate cause relationship, it does represent a meaningful link" between Rollarama's contact and the harm suffered. *Nowak*, 94 F.3d at 716. Accordingly, the Court finds that the "relatedness" requirement has been met here.

### 2. <u>Purposeful Availment</u>

The second consideration is whether defendant's contacts with Massachusetts represent a "purposeful availment" by Rollarama of conducting business in the state. "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated or fortuitous contacts with the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995). The two focal points are voluntariness and foreseeability. *Ticketmaster-New York, Inc., v. Alioto*, 26 F.3d 201, 207-208 (1st Cir. 1994). The defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Furthermore, a defendant's contacts with the forum state must be such that it should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The First Circuit has stated that "the mere existence of a website that is visible in a forum and that gives information about a company and its products is

not enough, by itself, to subject a defendant to personal jurisdiction. . . .  The mere existence of a web site does not does not demonstrate that a defendant is directing its business activities toward every forum where the web site is visible."  *McBee v. Delica Co., Ltd.*, 417 F.3d 107, 124 (1st Cir. 2005) (internal citations omitted).

Here, Rollarama's conduct within Massachusetts is sufficient to support a finding of "purposeful availment."  *See Nowak* , 94 F.3d at 717 (finding possibility of being haled into Massachusetts court foreseeable where defendant solicited Massachusetts corporation for the purpose of bringing employees of that corporation to its hotel in Hong Kong).  Rollarama did more than merely post information concerning the 2006 Pre-Regional Championships on NRRFSA's website.  Specifically, it voluntarily and purposely reached into Massachusetts by bidding to host NRRFSA's competitions, and sought to entice Massachusetts residents to leave the state and participate in competitions at its New York facility.  This practice of bidding to host, and subsequently hosting, competitions for the Massachusetts-based NRRFSA, as well as attending and participating in one or more NRRFSA meetings in Massachusetts, also "demonstrate [Rollarama's] substantial attempts to do business in Massachusetts and involve itself in the economy of the state, making its appearance before courts sitting in the state fair and foreseeable."  *Nowak*, 899 F. Supp. at 33 (D. Mass. 1995), *aff'd,* 94 F.3d 708 (1st Cir. 1996).

### 3.    "Gestalt" Factors

Finally, the constitutional analysis requires the Court to determine whether the exercise of jurisdiction, in light of the "gestalt" factors, would be reasonable.  These factors are:

> (1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective

resolution of the controversy, and (5) the common interest of all sovereigns in promoting substantive social policies.

*Nowak*, 94 F.3d at 717.

### a.    Defendant's Burden of Appearance

It is burdensome for Rollarama to defend itself in Massachusetts, as its only place of business is in New York.  However, it is "almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." *Id.* at 718.  For this particular factor to have any significance, the defendant must demonstrate that the exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.  *Pritzker*, 42 F.3d at 64.  Rollarama has not made that demonstration here.

### b.    Forum State's Adjudicatory Interest

Although Barry's injury occurred in New York, the First Circuit has noted that

Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims.

*Nowak*, 94 F.3d at 718 (internal citation omitted).  Thus, this factor weighs in plaintiff's favor.  *See Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 69 (D. Mass. 2001).

### c.    Plaintiff's Convenience

Plaintiff's choice of forum must be accorded a degree of deference.  *Sawtelle*, 70 F.3d at 1395.  This is obviously the most convenient forum for plaintiff, as it where Barry resides.

11

### d.    <u>Administration of Justice</u>

This factor "focuses on the judicial system's interest in obtaining the most effective resolution of the controversy." *Nowak*, 94 F.3d at 718. "This factor is often a wash and that proves to be the case here as well." *Sigros*, 129 F. Supp. 2d at 69 (*citing Sawtelle*, 70 F.3d at 1395; *Ticketmaster*, 26 F.3d at 211).

### e.    <u>Promotion of Social Policies</u>

This final factor requires the Court to consider the interests of the affected states in promoting substantive social policies. *Nowak*, 94 F.3d at 719. As noted, Massachusetts has an interest in protecting its citizens from foreign providers of services and in affording those citizens a convenient forum in which to bring their claims. On the other hand, New York has an interest in protecting its businesses from litigating in burdensome locations. *Id.* In *Nowak*, however, the First Circuit found that Massachusetts's interest in protecting its citizens slightly outweighed the interest of Hong Kong in protecting its businesses. *Id.* The Court comes to the same conclusion here. Therefore, this factor weighs slightly in favor of plaintiff.

*          *          *

On balance, the "gestalt" factors are either neutral or favor plaintiff. Considered together with the "relatedness" and "purposeful availment" prongs of the constitutional analysis, the Court concludes that the exercise of jurisdiction in Massachusetts is reasonable and does not violate the minimum constitutional requirements.

III.     <u>**Conclusion**</u>

For all the foregoing reasons, defendant's motion to dismiss for lack of personal

jurisdiction is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 7, 2008